## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN T and ROBERT T, SR., for themselves and their minor daughter, N.T., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| ERIN DEVENEY, Interim Commissioner of the DEPARTMENT OF CHILDREN & FAMILIES, and MARTHA COAKLEY, the Attorney General of the Commonwealth of Massachusetts, | ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.  14-12307

## MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Barry S. Pollack (BBO#642064)
Joshua L. Solomon (BBO#657761)
Peter J. Duffy (BBO#566682)
Matthew B. Arnould (BBO#675457)
POLLACK SOLOMON DUFFY LLP
133 Federal Street, Suite 902
Boston, MA  02110
617-439-9800 (Tel)
617-960-0490 (Fax)
bpollack@psdfirm.com
jsolomon@psdfirm.com
pduffy@psdfirm.com
marnould@psdfirm.com

*Counsel for Plaintiffs Karen T and Robert T, Sr., for themselves and their minor daughter N.T.*

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................1

ARGUMENT ...........................................................................................................................5

    I.       DEFENDANTS IMPROPERLY RELY ON EXTRINSIC EVIDENCE AND
           FAILED TO COMPLY WITH LOCAL RULE 7.1 ...................................................5

    II.     COUNT I CANNOT BE DISMISSED ON STANDING GROUNDS .....................6

          A.    The Mother and Father Have a Constitutional Right to Direct the Care and
                 Upbringing of their Daughter.........................................................................7

          B.    The Deprivation of the Mother's and Father's Constitutional Right to
                 Direct the Care and Upbringing of their Daughter is Certainly Impending ..9

    III.    COUNT II CANNOT BE DISMISSED ON MOOTNESS GROUNDS..................12

    IV.    THE REMEDY SOUGHT IN COUNT II BY PLAINTIFFS IS NOT BARRED
           BY THE ELEVENTH AMENDMENT ...................................................................15

    V.     THE ATTORNEY GENERAL SHOULD NOT BE DISMISSED FROM THE
           CASE ON 12(b)(6) GROUNDS ............................................................................17

CONCLUSION.......................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Bowater, Inc.*, 313 F.3d 611 (1st Cir. 2002)................................................... 13
*Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001)............. 5
*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1970)............................ 7
*Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12 (1st Cir. 1998) ................................. 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 17
*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)................................... 15
*Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d. 142 (D. Mass. 2011) ........................ 11, 18
*Conservation Law Found. v. Evans*, 360 F.3d 21 (1st Cir. 2004) ......................... 13, 15
*Converse Inc. v. Reebok Intern. Ltd.*, 328 F. Supp. 2d 166 (D. Mass. 2004) ................................ 6
*Diamond v. Charles*, 476 U.S. 54 (1986) ................................................................... 7
*Ex parte Young*, 209 U.S. 123 (1908)................................................................... 15, 16
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 13
*Futernick v. Sumpter Twp.*, 78 F.3d 1051 (6th Cir. 1996)............................................. 19
*Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177 (D.V.I. 1990) ................................. 9
*Green v. Mansour*, 474 U.S. 64 (1985)...................................................................... 16
*Guest-Tek Interactive Entm't, Inc. v. Pullen*, 665 F. Supp. 2d 42 (D. Mass. 2009) ..................... 17
*Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84 (1st Cir. 2002)............................ 13
*Hasbro, Inc. v. Serafino*, 168 F. R.D. 99 (D. Mass. 1996) ............................................. 6
*Hatch v. Dep't. for Children, Youth & Their Families*, 274 F.3d 12 (1st Cir. 2001......... 1, 7, 8, 11
*In re Colonial Mortg. Corp.*, 324 F.3d 12 (1st Cir. 2003)................................................ 5
*Kaufman v. Bd. of Trustees, Cmty. Coll. Dist. No. 508*, 522 F. Supp. 90 (N.D. Ill. 1981)............. 9
*Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68 (1st Cir. 2000) ...................................... 17
*Los Angeles Cnty. v. Davis*, 440 U.S. 625 (1979)....................................................... 13
*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) .......................................... passim
*N.H. Right to Life PAC v. Gardner*, 99 F.3d 8 (1st Cir. 1996) ................................. 9, 10
*Nat'l. Ass'n of Govt. Employees v. Mulligan*, 854 F. Supp. 2d 126 (D. Mass. 2012) ................. 17
*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................................. 19
*Rhode Island Med. Soc. v. Whitehouse*, 66 F. Supp. 2d 288 (D.R.I. 1999) aff'd, 239 F.3d 104
    (1st Cir. 2001)........................................................................................ 15
*Santosky v. Kramer*, 455 U.S. 745 (1982).................................................................. 8
*Savina Home Indus., Inc. v. Sec'y of Labor*, 594 F.2d 1358 (10th Cir. 1979)............................ 9
*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979)..................................................... 18
*Tower v. Leslie-Brown*, 326 F.3d 290 (1st Cir.2003) .................................................... 8
*Troxel v. Granville*, 530 U.S. 57 (2000) ............................................................ 7, 8
United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199 (1968) ................................. 15
United States v. W.T. Grant Co., 345 U.S. 629 (1953) ................................................. 13
*Va. Office for Prot. & Advocacy*, 131 S. Ct. 1632 (2011) .............................................. 15
*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988).......................................... 11
*Warth v. Seldin*, 422 U.S. 490 (1975) ..................................................................... 7

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ............................................................................ 5

*Winston v. City of New York*, 759 F.2d 242 (2d Cir.1985) ............................................................ 9

*York Hosp. v. Maine Health Care Fin. Comm'n*, 719 F. Supp. 1111 (D. Me. 1989) .................... 9

**Statutes**

42 U.S.C. § 1983 ...................................................................................................................... 9, 17

Mass. Gen. Laws ch. 12, § 3 ........................................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 17

Local Rule 7.1 .......................................................................................................................... 5, 6

**Other Authorities**

U.S. CONST. art. III, § 2 ................................................................................................................ 7

Plaintiffs Karen T (the "Mother") and Robert T, Sr. (the "Father"), for themselves and their daughter N.T. (the "Daughter"), respectfully oppose the Motion to Dismiss by Defendants Erin Deveney, as Interim Commissioner of the Massachusetts Department of Children and Families ("DCF"), and Martha Coakley, Attorney General for the Commonwealth of Massachusetts.  The Court should deny Defendants' motion to dismiss in its entirety.  Without adequate or articulable standards, DCF's imposition of ongoing restrictions and the threats underlying them continue to interfere with and improperly chill the Mother's and Father's fundamental constitutional rights to reasonably, vigilantly, and lovingly direct the medical care and upbringing of their critically ill thirteen year-old Daughter in the face of competing diagnoses and differing views on her medical condition.  Although the Government defendants ignore the pleadings and argue that no deprivation of Plaintiffs' constitutional rights is ongoing or impending and that this matter is effectively moot, the facts tell a very different story.

## BACKGROUND

It is axiomatic that the Due Process Clause of the Fourteenth Amendment provides heightened protection against unwarranted governmental interference with fundamental parental rights to make decisions concerning the care, custody, and control of their children.  *See Hatch v. Dep't. for Children, Youth & Their Families*, 274 F.3d 12, 20 (1st Cir. 2001).  These indelible rights include a presumption that fit parents make decisions in the best interests of their children without government micromanagement.  But at all times relevant to this action, DCF, which lacks sufficient, competent, and independent medical resources, has routinely allowed itself to be used by certain healthcare providers in the inpatient psychiatric unit at Children's Hospital Boston ("Bader 5") as a weapon against parents who struggle with diverging or controversial views concerning the medical care of their children.  (Compl. ¶¶ 1, 3, 8, 52, 55.)  By accusing

1

these parents of "doctor shopping" and labeling them as potentially guilty of DCF's expansive, unjustified, and admittedly unregulated concept of "medical child abuse," Bader 5 healthcare providers have enlisted DCF to override parental decision-making and prevent medical opinions that challenge their viewpoints.  (*Id*. ¶¶ 1, 3, 8, 52, 55, 71, 77-78.)  Such activities have been referred to as "parent-ectomies."  (*Id.* ¶ 71.)  Yet DCF has admitted point-blank that it has no recorded policies, practices, or standards specific to "medical child abuse."  (*Id.* ¶¶ 77-78.) Accordingly, although DCF is neither authorized nor competent to override parental decision-making to choose the qualified healthcare providers on whom they rely, it has nevertheless helped to facilitate a long and tragic pattern of depriving presumptively fit parents, who have not engaged in abuse or neglect, of their fundamental constitutional right to direct the care and upbringing of their children.  (*Id.* ¶¶ 3, 7, 58-59, 70-76, 86.)

Against this backdrop, the Mother and Father brought their Daughter to Children's Hospital Boston for treatment, having received multiple diagnoses for their Daughter, including an assessment of Pediatric Autoimmune Neuropsychiatric Disorder Associated With Streptococcal Infection ("PANDAS") and/or Auto-Immune Encephalitis from qualified providers.  (*Id.* ¶¶ 2, 13, 21-41.)  Notwithstanding these prior diagnoses, certain Bader 5 healthcare providers hastily concluded that the Daughter suffered instead from an undifferentiated somatic disorder and, along with DCF, threatened the Mother and Father with the loss of parental rights if they did not abandon other treatment in favor of inpatient psychiatric treatment.  (*Id.* ¶¶ 2, 4, 42-47, 60.)  These threats, which placed the Mother and Father under substantial duress, prevented the Mother, Father, and Daughter from seeking additional or alternative medical opinions at the time.  (*Id.* ¶¶ 2, 4, 42-47, 60, 62.)[1]

---

[1] As alleged in paragraph 62 of the Complaint, DCF found minimal concern "specifically because the Mother and Father 'agreed to comply with Children's Hospital recommendation to allow [the

2

Under DCF's oversight, the Daughter's resulting inpatient stay at Bader 5 led to a substantial deterioration of her condition. (*Id.* ¶¶ 5-6, 48-51.) Having utterly failed to improve the Daughter's condition, Bader 5 finally discharged her to her family. (*Id.* ¶ 52.) Glaringly absent from the Government's recitation of the so-called "Factual Background" in this case is *any* assertion that the Daughter's condition improved or was made well because of *anything* that DCF did. This is simply because N.T. is not well. Although her condition improved modestly following her return home to her family from Bader 5, she requires substantial further treatment. (*Id.* ¶¶ 5-6.) Indeed, at present, she can neither walk nor speak. (*Id.* ¶ 13.)

Notwithstanding the Bader 5 debacle and despite the absence of any *finding* of unfitness of the Mother or Father, or of abuse or neglect, DCF has nevertheless continued to threaten the Mother and Father with adverse government action against them if they seek out additional medical treatments and opinions for their Daughter; namely those that reflect the Mother's and Father's continued belief that their Daughter's condition may result from medical, as opposed to purely psychiatric, causes, including PANDAS, and their consultation with multiple doctors and specialists at different facilities. (*Id.* ¶¶ 7, 54, 61, 64-66, 69.) In particular, DCF imposed conditions on the Mother and Father that (1) they "identify a new pediatrician that would be willing to oversee [the Daughter]'s care"; (2) two specific PANDAS specialists, Dr. Latimer and Dr. Trifaletti, would have to "work[] together in treating" the Daughter; and (3) that the Mother and Father "provide a plan of emergency medical intervention should [the Daughter's] condition deteriorate . . . ." (*Id.* ¶ 65.) Although DCF technically closed the case, these conditions remain in effect, notwithstanding the Daughter's ongoing needs. (*Id.* ¶ 66.) Moreover, DCF has

Daughter] to be admitted to Bader 5.'" The Government's argument that "no such statement appears in the investigator's conclusions or anywhere in the report and is entirely at odds with the sequence of events" is flatly wrong. (*See* Defs.' Mem. at 5 n.4.) In fact, that exact statement appears, verbatim, at the top of page 8 of Defendants' Exhibit F, upon which Defendants improperly rely, as discussed *infra*.

continued to make unwarranted intrusions on the Mother's and Father's right to oversee their Daughter's care, including through subsequent "investigations," which, among other things, documented the remarkable "concern" that, with the Mother enmeshed in her Daughter's care, the Daughter "has made some great progress."  Despite this "great progress," DCF focused on a theory that the Mother had continued to "doctor shop."  (*Id. ¶¶* 66-69.)  DCF has also continued to engage in protracted adverse and threatening actions against other parents for "medical child abuse" in the form of "doctor shopping," notwithstanding competing diagnoses of the children involved.  *See id.* ¶¶ 70-76.

Accordingly, the Mother, Father, and Daughter seek appropriate declaratory relief from this Court – consistent with the specific facts, circumstances, and history of this case and their rights under the Due Process Clause of the Constitution – that (1) DCF cannot base any government action against the Mother and Father on their continued belief that their Daughter's difficulties are due to physical or medical causes, including PANDAS or Auto-Immune Encephalitis, or because they continue to consult with and seek care for their Daughter from multiple doctors or specialists at different facilities, (*id.* ¶¶ 10, 88), and (2) DCF has unconstitutionally exceeded its statutory authority by taking adverse actions against the Mother, Father, and Daughter, in the absence of any finding of abuse or neglect defined by adequate and reasonable standards for which they receive adequate advance notice, (*id.* ¶ 96).

Absent such declarations, the Mother and Father's constitutional rights and liberty interests will be violated by DCF's continued chilling of their efforts to seek appropriate and effective medical care for their Daughter, as described below.

## ARGUMENT

### I.   DEFENDANTS IMPROPERLY RELY ON EXTRINSIC EVIDENCE AND FAILED TO COMPLY WITH LOCAL RULE 7.1.

As a threshold matter, the Court should deny this motion in light of the Government's improper reliance on uncertified extrinsic evidence and its failure to comply with Local Rule 7.1. In support of its motion, the Government defendants ignore the pleadings wholesale and rely instead upon eight DCF reports, which have not been subject to testing in this litigation, have not been certified, the completeness of which has not been tested, and are not even attached to a lawyer's, let alone a witness's, declaration.  Indeed, there is nothing on the record that establishes the completeness or authenticity of the Government's exhibits.  Accordingly, it is axiomatic that the Court should not consider the untested extrinsic evidence.  *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The Government's attempt to point to the narrow exception that extrinsic documents may be considered when they are referenced in a pleading is unavailing.  Integration by reference is a doctrine designed to allow the contents of a document relied upon in a complaint to be considered by the Court in a review of the adequacy of the pleadings.  *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).  It is not a vehicle for a defendant/movant to substitute alternative allegations of fact for those adequately pleaded by a plaintiff.  *See id.*; *see also In re Colonial Mortg. Corp.*, 324 F.3d 12, 15 (1st Cir. 2003).  The Government defendants cannot rely, in an attempt to move this Court to dismiss the Complaint, on some assembly of untested DCF reports in an effort to avoid the facts actually pleaded.  The sophistry of Defendants' effort is especially apparent here, where the Complaint did not purport to identify all DCF reports, and some of the DCF reports attached to the Government's memorandum were not even referenced in

the Complaint.  Moreover, the Government appears to have selectively included certain DCF

reports involving Plaintiffs, while excluding others.  The selective inclusion of some uncertified

documents seems designed to embarrass or degrade the Mother and Father, and appears

symptomatic of the Government's efforts to chill their constitutional rights.

Additionally, the Government did not confer with undersigned counsel prior to filing this

motion, nor does the Government's motion contain the mandatory certification pursuant to Local

Rule 7.1.  *See* L.R. 7.1(A)(2) ("No motion shall be filed unless counsel certify that they have

conferred and have attempted in good faith to resolve or narrow the issue.").  There is simply no

excuse for an attorney and member of the Bar of this Court to ignore local rules.  For these

reasons alone, the Government's motion should be denied.  *See Hasbro, Inc. v. Serafino*, 168 F.

R.D. 99, 101-02 (D. Mass. 1996) (denying motion for failure to comply with Local Rule 7.1's

mandatory pre-motion meet and confer requirement); *Converse Inc. v. Reebok Intern. Ltd.*, 328

F. Supp. 2d 166, 171 (D. Mass. 2004) (imposing sanctions for failure to comply with Local Rule

7.1 because "Rule 7.1 is no trifle, and [] the court expects compliance with both the letter and

spirit of its requirements.").  The fact that Defendants are state government agencies does not

excuse them from compliance with the Federal and Local Rules when appearing in this Court.

## II.      COUNT I CANNOT BE DISMISSED ON STANDING GROUNDS.

The aforementioned failures are not merely technical violations.  In an attempt to justify

the unjustifiable and in the process of brazenly ignoring the Local Rules, the Government also

ignores the well-pleaded allegations in the Complaint, including that the Mother and Father have

standing to bring this action for declaratory relief because DCF's actions and statements have, as

Plaintiffs have extensively alleged, imposed ongoing restrictions on them, and chilled their

constitutional right to direct the care and upbringing of their Daughter, who remains in need of

6

treatment.  Nothing more is needed under Article III.  *See Diamond v. Charles*, 476 U.S. 54, 64 (1986) (find that conflict between "officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy'"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1970) (finding that a party need not violate a statute and suffer the penalty to generate a conflict worthy of standing).

"The necessity to establish constitutional standing is rooted in the case or controversy requirement of the Constitution.  The standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 56 (1st Cir. 2003) (citation omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (internal quotation marks omitted); *see also* U.S. CONST. art. III, § 2. In order to establish a case or controversy, plaintiffs must show both the existence of a federal constitutional or statutory right, and some "certainly impending" deprivation of that right, without due process of law, as a result of defendants' acting under color of law.  Parents have standing to care for their children and to enforce their right to do so; virtually nothing is more fundamental.  Plaintiffs' allegations have satisfied the essential elements of standing.

### A.  The Mother and Father Have a Constitutional Right to Direct the Care and Upbringing of their Daughter.

Plaintiffs allege that the Mother and Father have a fundamental constitutional right to direct the medical care of their Daughter.  (Compl. ¶¶ 1, 3, 83-85.)  As the Government itself recognizes, this Court held in *Hatch* that the right to familial integrity "is plainly of constitutional dimension," and "[t]he interest of parents in the care, custody, and control of their children is among the most venerable of the liberty interests embedded in the Constitution."  274 F.3d at 20 (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (reviewing Supreme Court cases that have

7

recognized the right and stating that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court")). This Court has recognized that the deprivation of this right would constitute a violation of due process, in violation of the Fourteenth Amendment to the Constitution. *Tower v. Leslie-Brown*, 326 F.3d 290, 298 (1st Cir.2003); *see also Troxel*, 530 U.S. at 65-66 ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

While the *Hatch* Court observed that parents' right to familial integrity must be balanced against the right of the state to investigate allegations that the child is in danger, and in appropriate circumstances to terminate the relationship between parent and child, *Hatch*, 274 F.3d at 20 (citing *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982)), the Government's conclusory assertion that the Mother, Father, and Daughter seek a declaration that would somehow upset this balance ignores the pleadings wholesale. Notwithstanding the Government's shocking and repeated suggestions to the contrary, Plaintiffs categorically do not seek carte blanche to engage in abusive decision-making concerning the medical care of their Daughter, nor to be "free from child abuse and neglect investigations." (*See* Defs.' Mem. at 12 & 14). Rather, with a backdrop of DCF's lack of adequate and articulable standards of "medical child abuse" in the form of so-called "doctor shopping," the Mother, Father, and Daughter specifically seek a declaration that "DCF cannot, consistent with the Due Process Clause of the Constitution, base any government action against the Mother and Father on their continued belief that their Daughter's difficulties are due to physical or medical causes, including PANDAS or Auto-Immune Encephalitis, or because they continue to consult with and seek care for their Daughter from multiple doctors or specialists at different facilities." (Compl. ¶¶ 10, 88.) Absent such a declaration, as described below, the Mother and Father's constitutional

8

rights and liberty interests will be violated by DCF's imposition of restrictions and continued

chilling of their efforts to seek appropriate and effective medical care for their Daughter.

**B.  The Deprivation of the Mother's and Father's Constitutional Right to Direct the Care and Upbringing of their Daughter is Certainly Impending.**

Plaintiffs allege that DCF's ongoing conduct has unfairly and tragically imposed

restrictions and chilled the Mother's and Father's ability to seek and obtain appropriate care for

their Daughter.  (Compl. ¶¶ 1, 6, 76, 79, 85).  These allegations are sufficient to meet the

"forgiving" inquiry into whether a deprivation of their constitutional rights is "certainly

impending."  *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 14-15 (1st Cir. 1996) (describing

applicable evidentiary bar as a "low threshold").  Courts have allowed constitutional challenges

to avoid the chilling effect of questionable state action in a wide variety of circumstances.  *See,*

*e.g.*, *York Hosp. v. Maine Health Care Fin. Comm'n*, 719 F. Supp. 1111, 1127 (D. Me. 1989)

("A chilling effect on constitutionally protected rights can be the basis of a due process claim.")

(citing *Winston v. City of New York*, 759 F.2d 242, 245 (2d Cir.1985) and *Savina Home Indus.,*

*Inc. v. Sec'y of Labor*, 594 F.2d 1358, 1366 (10th Cir. 1979)); *see also Kaufman v. Bd. of*

*Trustees, Cmty. Coll. Dist. No. 508*, 522 F. Supp. 90, 93-94 & 101 n.3 (N.D. Ill. 1981) (holding

that plaintiffs had standing to challenge a rule against concurrent full-time employment even

though they did not currently have outside employment because "[t]heir interest in determining

the parameters of the rule and in assuring that it [was] evenly enforced . . . assure[d] the concrete

adverseness that justifies[d] the exercise of federal jurisdiction.  Their interest in being free from

arbitrary exercise of governmental power [was] protected under the fourteenth amendment and

42 U.S.C. s 1983."); *Gen. Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1188 (D.V.I. 1990)

(holding that employer had standing to challenge constitutionality of Virgin Islands Wrongful

Discharge Act in light of the chilling effect of the Act on the plaintiffs' ability to discharge its employees at will.).

Indeed, in analogous circumstances, the First Circuit has held that when a plaintiff faces a choice between violating a statute or self-censorship "a pre-enforcement facial challenge to a statute's constitutionality is entirely appropriate unless the state can convincingly demonstrate that the statute is moribund or that it simply will not be enforced." *Gardner*, 99 F.3d at 16. Here, as described above, the Mother and Father face a choice between, on the one hand, subjecting themselves to further adverse state action by DCF if they seek out additional help from qualified healthcare providers or make their own choices among opinions and advice from qualified healthcare providers for the medical care of their Daughter or, on the other hand, self-censoring their constitutionally protected right to direct their Daughter's care and upbringing. Either injury is justiciable. *Id.* at 14.

The Government's argument that Plaintiffs have nothing more than a subjective fear that DCF will take adverse action in response to the Mother and Father's decisions concerning their Daughter's medical care once again ignores the pleadings wholesale. To the contrary, as described above, Plaintiffs have clearly alleged that DCF has (1) unconstitutionally expended the concept of "medical child abuse" in the form of "doctor shopping" without adequate or articulable standards; (2) targeted the Mother and Father for their continued belief that their Daughter's condition may result from medical issues, including PANDAS or Auto-Immune Encephalitis, and their continued consultation with multiple doctors and specialists at different medical facilities; (3) engaged in a tragic pattern of activity against parents in similar situations; (4) suggested and demonstrated that the Mother and Father will face further adverse government action against them if they seek additional medical treatments and opinions for their Daughter,

10

who requires further treatment; and (5) imposed, without any finding of unfitness or abuse or neglect, extraneous restrictions on the Mother and Father that impede their ability to direct their Daughter's care.  The Mother and Father have further alleged, point blank, that these actions, alone and together, have chilled and continue to chill their ability to seek and obtain appropriate care for their Daughter, while placing them at substantial risk for adverse state action if they do so.  That injury – the restrictions and chilling effect – is not only likely, but has already come to pass, and, as this Court held under analogous circumstances, is therefore ripe for resolution. *Mangual*, 317 F.3d at 60; *see also Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d. 142, 153 (D. Mass. 2011) ("It is well established that allegations of ongoing harm satisfy Article III's standing requirement.").

That the Daughter is currently living with the Mother and Father does not preclude a finding that they have the requisite standing to mount their claims. *See Mangual,* 317 F.3d at 56 ("A party need not violate the statute and suffer the penalty in order to generate a conflict worthy of standing in federal court."); *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (reasoning that plaintiff who challenges statute must demonstrate realistic danger of sustaining direct injury as result of its operation or enforcement, but does not have to await consummation of threatened injury to obtain preventive relief—if injury is certainly impending, that is enough).  Indeed, as this Court recognized in *Hatch*, "the Constitution allows a case worker to take temporary custody of a child, without a hearing, when the case worker has a reasonable suspicion that child abuse has occurred (or, alternatively, that a threat of abuse is imminent)."  274 F.3d at 22.  Accordingly, if the Mother and Father seek additional medical treatments and opinions for their Daughter based on their continued belief that their Daughter's difficulties are due to physical or medical causes, including PANDAS or Auto-Immune

Encephalitis, or continue to consult with and seek care for their Daughter from multiple doctors or specialists at different facilities, DCF is empowered to deem such conduct "abuse" and seek an *ex parte* order for removal of the Daughter from her Mother and Father.  DCF thus has unfettered ability to present a one-sided story to the Court to effectuate the Mother and Father's loss of their parental rights, at least temporarily.  That ability, coupled with DCF's imposition of extraneous restrictions on the Mother and Father that impede their ability to direct their Daughter's care, and DCF's pattern of depriving presumptively fit parents, who have not engaged in abuse or neglect, of their fundamental constitutional right to direct the care and upbringing of their children, makes for sufficient state action to create a ripe controversy. *Mangual*, 317 F.3d at 60 ("The purpose of the alternative ground for standing . . . is so that plaintiffs need not break the law in order to challenge it.").  The Government's protestations notwithstanding, such a course of action is hardly unprecedented in light of DCF's pattern of such activity against parents in similar circumstances.  (*See* Compl. ¶¶ 70-76.)

Accordingly, Plaintiffs have sufficiently alleged a certainly impending deprivation of their recognized constitutional rights, and have adequately demonstrated their individualized and concrete need for this court's intervention to alleviate DCF's continued chilling of their efforts to seek appropriate and effective medical care for their Daughter.  Accordingly, the Government's motion to dismiss Count I should be denied.

### III.    COUNT II CANNOT BE DISMISSED ON MOOTNESS GROUNDS.

The Government defendants next argue that Count II of the Complaint is moot because Plaintiffs purportedly have no legally cognizable interest in a declaration that DCF has unconstitutionally exceeded its statutory authority by taking adverse actions against the Mother, Father, and Daughter, in the absence of a finding of abuse or neglect defined by adequate and reasonable standards for which they receive adequate advance notice.  This argument merits little

response.  As Plaintiffs have extensively alleged, absent such a declaration, the Mother's and

Father's constitutional rights and liberty interests will be violated by DCF's continued chilling of

their efforts to seek appropriate and effective medical care for their Daughter.

Generally, a case becomes moot if "it can be said with assurance that 'there is no

reasonable expectation . . .' that the alleged violation will recur, and . . . interim relief or events

have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles

Cnty. v. Davis*, 440 U.S. 625 (1979).  "A party can have no legally cognizable interest in the

outcome of a case if the court is incapable of providing any relief which will redress the alleged

injury." *Gulf of Maine Fisherman's Alliance v. Daley*, 292 F.3d 84, 88 (1st Cir. 2002).  As a

result, First Circuit precedent supports the notion that the core question that Article III of the

United States Constitution compels courts to ask is whether adjudication of an issue can grant

meaningful relief.  *Conservation Law Found. v. Evans*, 360 F.3d 21, 26 (1st Cir. 2004).

Critically, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he

burden is a heavy one.'"  *Mangual*, 317 F.3d at 60 (quoting *United States v. W.T. Grant Co.*, 345

U.S. 629, 633 (1953)).  "A defendant's voluntary cessation of allegedly unlawful conduct does

not suffice to moot a case."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

U.S. 167, 174 (2000).  Indeed, the Supreme Court has held that "a defendant claiming that its

voluntary compliance moots a case bears the formidable burden of showing that it is absolutely

clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Id.* at 190.

The First Circuit has described the "reasonably expected to recur test" as an estimate of raw

probabilities, such that if there is a high likelihood of recurrence, the case should not be mooted.

*Adams v. Bowater, Inc.*, 313 F.3d 611, 613 (1st Cir. 2002).

Here, the Government defendants have failed to meet their "heavy" burden of demonstrating that it is "absolutely clear" that the circumstances giving rise to this case will not recur.  There is simply no "absolute" assurance that DCF's challenged conduct will not be repeated.  As described above, DCF has suggested and demonstrated that the Mother and Father will face further adverse government action against them if they seek additional medical treatments and opinions for their Daughter based on their continued belief that their Daughter's difficulties are due to physical or medical causes, including PANDAS or Auto-Immune Encephalitis, and DCF has imposed, without any finding of unfitness or abuse or neglect and leagues beyond its statutory power, extraneous restrictions on the Mother and Father that impede their ability to direct their Daughter's care.  Additionally, DCF has continued to make unwarranted intrusions on the Mother's and Father's right to oversee their Daughter's care, including through subsequent "investigations," which, as described above, documented the remarkable "concern" that, with the Mother enmeshed in her Daughter's care, the Daughter "has made some great progress."  Despite this "great progress," DCF still focused on a theory that the Mother had continued to "doctor shop."  And, as described above, DCF enjoys a nearly unfettered ability to effectuate the Mother's and Father's loss of their parental rights, at least temporarily, and has repeatedly employed this power against parents to tragic effect.  Thus, the Mother and Father face a substantial risk of subjecting themselves to further adverse state action by DCF merely from seeking out additional help from qualified healthcare providers or from making their own choices among conflicting opinions and advice from qualified healthcare providers for the medical care of their Daughter.  The Government's assertion that this case is moot simply because DCF has "already concluded its investigation and closed the matter" is simply, totally insufficient to sustain a dismissal on Article III grounds.  *United States v.*

14

*Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *Evans*, 360 F.3d at 26-27 (noting that the government defendant's "voluntary cessation of the challenged conduct does not render the challenge moot" where the government defendant has not shown that the challenged action "will not recur"); *Rhode Island Med. Soc. v. Whitehouse*, 66 F. Supp. 2d 288, 303-04 (D.R.I. 1999) aff'd, 239 F.3d 104 (1st Cir. 2001) (holding that plaintiffs had standing despite promise by Governor and state Attorney General that they would not prosecute any physician who performed a "conventional abortion"). As a practical matter, in these circumstances, the only factor that would make this case moot would be the Daughter's medical recovery, which, tragically, DCF, by its actions and omissions, has impeded, and continues to impede. Accordingly, the Government's motion to dismiss Count II on mootness grounds should be denied.

## IV.   THE REMEDY SOUGHT IN COUNT II BY PLAINTIFFS IS NOT BARRED BY THE ELEVENTH AMENDMENT.

The Government's argument that the relief sought by Plaintiffs is barred by the Eleventh Amendment similarly ignores the pleadings and nature of the requested relief. In this action, Plaintiffs do not seek monetary relief for their injuries. As the Government itself concedes, it has long been established under a series of cases beginning with *Ex parte Young*, 209 U.S. 123 (1908), that a federal court has jurisdiction over a suit to enjoin a state official's prospective enforcement of a state regulation in violation of a plaintiff's federal rights. Simply stated, when a "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," the Eleventh Amendment does not imbue a state official with immunity. *Va. Office for Prot. & Advocacy*, 131 S. Ct. 1632, 1639 (2011).

15

Here, as detailed above, Plaintiffs have extensively alleged an ongoing violation by DCF of their constitutional parental rights to direct the care and upbringing of their Daughter.  The Government's assertion that an ongoing violation by DCF is impossible because DCF "closed the case," is simply not true.  The Court need look no further than DCF's continuing imposition of extraneous conditions on the Mother and Father that impede their ability to direct their Daughter's care, notwithstanding the lack of any finding of abuse or neglect, and DCF's continued re-opening of the case and "investigation" of the Mother and Father to conclude that the requested relief would "prevent a continuing violation of federal law" as anticipated in *Ex Parte Young*.  *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Additionally, the requested relief is patently prospective.  Indeed, the Court need look no further than the prayer itself:

> A declaration . . . that DCF has unconstitutionally exceeded its statutory authority by taking adverse actions against parents that infringe on their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in the absence of a finding of abuse or neglect defined by adequate and reasonable standards for which they receive adequate advance notice.

This forward-looking prayer seeks redress for the restrictions that have been imposed and to prevent the ongoing chilling of the Mother and Father's constitutional parental rights and liberty interests, so they can seek appropriate and effective medical care for their Daughter. Accordingly, the Government's motion to dismiss Count II on Eleventh Amendment grounds should be denied.

## V.  THE ATTORNEY GENERAL SHOULD NOT BE DISMISSED FROM THE CASE ON 12(b)(6) GROUNDS.

Finally, in a single paragraph, the Government defendants contend that the Attorney General should be dismissed from this case pursuant to Fed. R. Civ. P. 12(b)(6).  Glaringly absent from the Government's argument is the fundamental maxim that all factual allegations and reasonable inferences therefrom must be taken as true.  This Court, like every court to address the issue, has required since *Twombly* that, at the motion to dismiss stage, the reviewing court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in [the non-movant's] favor."  *Guest-Tek Interactive Entm't, Inc. v. Pullen*, 665 F. Supp. 2d 42, 44 (D. Mass. 2009) (citing *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000)); *Nat'l. Ass'n of Govt. Employees v. Mulligan*, 854 F. Supp. 2d 126, 129 (D. Mass. 2012).  To proceed, the allegations and inferences must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Plaintiffs have satisfied this standard.  The Government's assertion that the Complaint lacks "a single factual allegation . . . that concerns the Attorney General" is simply not true.  To the contrary, as detailed in the Complaint, Defendant Coakley's office is a creature of statute empowered by Mass. Gen. Laws ch. 12, § 3 "to appear for the commonwealth and for state departments, officers and commissions in all suits and other civil proceedings in which the commonwealth is a party or interested, or in which the official acts and doings of said departments, officers and commissions are called in question . . . ."  (Compl. ¶ 15.)  Moreover, the Attorney General is a person acting under color of state law, within the meaning of 42 U.S.C. § 1983, in her responsibility for all legal matters in the Commonwealth in which the official acts and doings of state departments, officers and commissions are called in question.  (*Id.* ¶ 82.) These responsibilities inevitably implicate DCF's ongoing chilling of the Mother and Father's

constitutionally-protected efforts to seek appropriate and effective medical care for their Daughter, and its expansive, unjustified application of the "doctor shopping" and "medical child abuse" labels as weapons against presumptively fit parents, including the Mother and Father, who have not engaged in abuse or neglect, in gross derivation of its statutory power. Accordingly, the Attorney General plays an indispensable role in the both impending and ongoing deprivation of Plaintiffs' recognized constitutional rights, as detailed above, and is a necessary and appropriate defendant in this case.  *Cf. Shell Oil Co. v. Noel*, 608 F.2d 208, 210-13 (1st Cir. 1979) (holding that so long as a state official has some connection with enforcement, then the official is an appropriate defendant).  Likewise, binding the Attorney General to the findings by this Court ensures uniform compliance among state agencies with any directives from this Court.  This objective is particularly important in this case, where multiple agencies can play a role in related issues at stake in these proceedings.

Courts have denied requests by state officials to be dismissed from actions in similar circumstances.  In *Patrick*, for example, the Court denied a motion to dismiss Governor Deval Patrick as a defendant in a class action on behalf of all children who have been (or will be) placed in the custody of DCF as a result of a state juvenile court order adjudicating them in need of "care and protection" due to abuse or neglect by their parents, holding that "[t]he fact that on a daily basis Defendant Patrick plays a somewhat detached, supervisory role [as applicable to the allegations at bar] is inconsequential."  771 F. Supp. 2d. at 158-59.  On the basis of the Governor's general executive, budgetary, and supervisory involvement, via executive orders, in the ongoing maintenance of the child welfare system, the Court concluded that Defendant Patrick "certainly" had sufficient connection to the enforcement of DCF policy to remain in the case.  *Id.* The same logic applies to Defendant Coakley in this case, and the motion to dismiss should be

18

denied on this ground as well. *Cf. Papasan v. Allain*, 478 U.S. 265, 282 n. 14 (1986) (holding

that Eleventh Amendment did not bar suit against secretary of state responsible for "general

supervision" of the administration of public school land funds by local school officials);

*Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1055 n. 5 (6th Cir. 1996) (rejecting as "ridiculous"

defendants' argument that "only the officer with immediate control over the challenged act or

omission is amenable to § 1983") (abrogated on different grounds); *Mangual*, 317 F.3d at 57 (1st

Cir. 2003) (where plaintiff challenges a state statute, "the proper defendants are the government

officials whose role it is to administer and enforce it").

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants'

motion to dismiss in its entirety.

Dated: August 13, 2014

<div style="margin-left: 40%;">

/s/ Matthew B. Arnould
Barry S. Pollack (BBO#642064)
Joshua L. Solomon (BBO#657761)
Peter J. Duffy (BBO#566682)
Matthew B. Arnould (BBO#675457)
POLLACK SOLOMON DUFFY LLP
133 Federal Street, Suite 902
Boston, MA  02110
617-439-9800 (Tel)
617-960-0490 (Fax)
bpollack@psdfirm.com
jsolomon@psdfirm.com
pduffy@psdfirm.com
marnould@psdfirm.com

*Counsel for Plaintiffs Karen T and Robert T, Sr.,
for themselves and their minor daughter N.T.*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

("NEF") on August 13, 2014.

/s/ Matthew B. Arnould
Matthew B. Arnould (BBO#675457)